**Phillip SANTORO, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 20412.**

United States Court of Appeals
Ninth Circuit.

Oct. 31, 1968.

Richard F. LeFavour, Oak Park, Ill., for appellant.

John P. Hyland, U. S. Atty., Sacramento, Cal., Kirby W. Patterson, Dept. of Justice, Washington, D. C., for appellee.

Before MADDEN, Judge, United States Court of Claims, and BARNES and MERRILL, Circuit Judges.

BARNES, Circuit Judge.

Phillip Santoro was tried and convicted upon an indictment charging him with conspiracy to transport stolen vehicles (18 U.S.C § 371), the interstate transportation of a stolen motor vehicle (18 U.S.C. § 2312), and knowingly selling a stolen motor vehicle moving in or a part of interstate commerce (18 U.S.C. § 2313). That conviction was later affirmed by this court, and the opinion reported at 388 F.2d 113 (1967). The district court had jurisdiction under 18 U. S.C. § 3231, and we had jurisdiction of the appeal under 28 U.S.C. § 1291.

Subsequently, the Supreme Court granted a writ of certiorari in the present case, vacated the judgment of this court, and remanded the case to us for further consideration in light of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476. Santoro v. United States, 392 U.S. 301, 88 S.Ct. 2054, 20 L.Ed.2d 1106 (1968). *Bruton* was made retroactive in Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L. Ed.2d 1100 (1968).

Santoro, together with Joseph Coduto, Peter LaMagna and Dorothy Haynes, was engaged in marketing stolen cars. The operation involved the theft of Cadillac automobiles in the Chicago area, their transportation to the West Coast, the alteration of the vehicle identification numbers and the sale to used car dealers in California. From April through July of 1963, six Cadillacs were stolen in the Chicago area. In April of 1963 two of them were sold by codefendant Haynes to a dealer in Oakland, California. Six weeks later appellant Santoro, using the name Cassar, and Mrs.

Haynes returned to the same dealer and sold another of the stolen vehicles. On June 3 appellant and Mrs. Haynes sold another of the stolen vehicles in San Francisco. On July 3 Mrs. Haynes sold a stolen white Cadillac convertible to Thrifty Motors in Stockton, California. The latter Cadillac had been stolen from United City Gas Company and its president, Mr. Ralph Sieben. At the time it was stolen, the glove compartment contained two credit cards issued to Ralph Sieben. On July 19, 1963, appellant Santoro, accompanied by codefendants Coduto and LaMagna, visited Thrifty Motors in Stockton and offered two Cadillacs for sale. F.B.I. agents approached Santoro and warned him of his constitutional rights. Appellant was taken to the F.B.I. office in Stockton and asked to identify himself. He produced two credit cards issued to Ralph Sieben and a false Illinois driver's license in the name of Ralph Sieben. He told F.B.I. agents that he was Sieben, but later changed his story to state that a man named "Ralph" had asked him to transport the cars to the West Coast and had given him the cards to facilitate the sale.

On this remand, we are asked to decide whether the introduction at trial of the post-arrest statements of codefendants LaMagna, Coduto and Haynes violated appellant's right of confrontation secured by the sixth amendment. After careful reconsideration in light of Bruton v. United States, supra, we hold that appellant's rights were not violated and, hence, affirm the conviction below, for the reasons which follow.

In *Bruton,* the out of court confession of the petitioner's codefendant, Evans, that the latter and petitioner had committed armed robbery, was admitted in evidence. Evans did not testify at trial and, therefore, was not subject to confrontation or cross-examination by Bruton. The trial court, relying upon Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), instructed the jury that the declarant's confession inculpating the petitioner had

to be disregarded in determining the latter's guilt or innocence. Overruling *Delli Paoli* and reversing the conviction, the Court in *Bruton* held that it could not accept limiting instructions as an adequate substitute for the petitioner's constitutional right of cross-examination. The only acceptable course under the circumstances was exclusion of the confession.

In its opinion, the Court stated:

"Plainly, the introduction of Evans' confession added substantial, perhaps even critical, weight to the Government's case in a form not subject to cross-examination, since Evans did not take the stand. Petitioner thus was denied his constitutional right of confrontation." Id., 391 U.S. at 127–128, 88 S.Ct. at 1623.

The Court concluded:

"The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination." Id., at 136, 88 S.Ct. at 1628.

Thus, the Court emphasized that Bruton's rights were violated because he could not cross-examine his codefendant.

Contrary to the case in *Bruton*, the three defendants whose out of court statements incriminated appellant Santoro all took the stand (as did appellant himself). Thus, appellant had an opportunity to confront and cross-examine those persons whose statements inculpated him. Indeed, defendants LaMagna, Coduto and Haynes were thoroughly questioned and cross-examined by the Government at trial. (Their testimony covers some 150 pages of the transcript.) Therefore, the confrontation rationale of *Bruton* is not applicable in the present case.

Turning to the specific evidence in question on this appeal, the Government, during the presentation of its case, introduced two written statements made and signed by defendant LaMagna recounting how the latter had arranged with "Ralph" or "Phil" to drive Cadillacs from Chicago to San Francisco and had then done so, as agreed. (Exhibits #62 and #63.) Later, on direct examination by the attorney for the defendants, LaMagna testified as to events which were substantially the same as those recited in the signed statements. During this examination, the attorney for the defendants attempted to discredit LaMagna's signed statements which had been introduced by the Government. On cross-examination, the attorney for the Government went through both statements with LaMagna, line by line. The defendant testified that he made each statement contained therein and that each statement was true and correct, subject only to qualification as to whether he used the name "Ralph" or "Phil." (R.T. 593–605.)

The Government introduced testimony as to defendant Coduto's statements to F.B.I. agents following his arrest. The statements told of Coduto's meeting with Ralph Sieben (later identified in the same interview as Phil Santoro) in Chicago and arranging to drive Cadillacs to San Francisco. When questioned and cross-examined at trial, defendant Coduto testified to the same events, stating, however, that he only knew appellant as "Phil Santoro."

Finally, the Government also introduced testimony of a conversation had between F.B.I. agents and defendant Haynes, in which the latter explained how she was involved in the sale of the Cadillacs. In this conversation, she identified the person who was selling the cars as "Phillip Cassar." At trial, defendant Haynes was questioned and cross-examined. She testified as to her involvement in the car sales in greater detail than she had done during the F. B.I. interview. She explained that Phillip Santoro used the name "Phillip Cassar."

Thus, appellant's three codefendants took the stand and each testified regarding the subject of his or her out of court statements which implicated appellant. On this ground we distinguish Bruton v. United States, supra, and other cases

which have reversed convictions for lack of confrontation.

In footnote 4 of the *Bruton* opinion, the Court cited several federal cases since Delli Paoli v. United States, supra, which refused to consider an instruction as inevitably sufficient to avoid the setting aside of convictions. All of those cases are significantly different from the case we are now considering, for in not one of those cases did a confessing codefendant take the stand. See, e. g., United States ex rel. Floyd v. Wilkins, 367 F.2d 990 (2d Cir. 1966); United States v. Bozza, 365 F.2d 206 (2d Cir. 1966); Greenwell v. United States, 119 U.S.App.D.C. 43, 336 F.2d 962 (1964); Jones v. United States, 119 U.S.App.D.C. 284, 342 F.2d 863 (1964); Barton v. United States, 263 F.2d 894 (5th Cir. 1959); United States ex rel. Hill v. Deegan, 268 F.Supp. 580 (S.D.N.Y. 1967).

Furthermore, in the above cases additional factors also militated toward reversal. In United States ex rel. Floyd v. Wilkins, supra, the court noted that the evidence properly admissible against the defendant was slight. Id., at 993. In United States v. Bozza, supra, the court stated that the codefendant's "confession furnished devastating corroboration of the heavily attacked testimony of an accomplice on which the prosecution almost entirely depended for proof of guilt." Id., at 216. In Jones v. United States and Greenwell v. United States, both supra, the confessions in question were not even admissible against their respective declarants. 342 F.2d at 865; 366 F.2d at 966. To the contrary, the incriminating statements in the present case were admissible against appellant's codefendants and the evidence, other than the implication contained in these statements, was ample to sustain the jury's verdict.

In affirming the conviction below for the reason that appellant had an opportunity to confront and cross-examine his codefendants, we decline to follow the reasoning of the court in United States v. Guajardo-Melendez, 401 F.2d 35 (7th

Cir., August 9, 1968). In that case, a codefendant's hearsay conversation was held inadmissible, despite the fact that the codefendant took the stand. The court acknowledged that the confrontation rationale of *Bruton* was not literally applicable. In addition, we distinguish the present case on its facts from *Guajardo-Melendez*. In the latter case, the court found that the hearsay conversation added little to the Government's case against the codefendant while it was "deadly poison" as to the defendant. Such is not the case on this appeal.

For the same reason, we also distinguish this case from United States v. Lyon, 397 F.2d 505 (7th Cir. 1968) and United States v. Gordon, 253 F.2d 177 (7th Cir. 1958), the two cases on which the court relied in reaching its decision in *Guajardo-Melendez*, supra. In *Lyon*, the declarant codefendant did not testify at trial. Hence, it was held that in light of Bruton v. United States, supra, the introduction of his extrajudicial admissions at the joint trial violated Lyon's sixth amendment right of confrontation.

In *Gordon*, the court said:

"[I]t is doubtful if the testimony under discussion can properly be characterized as incriminating admissions by [the declarant codefendant]; in fact, they are exculpatory rather than incriminating. It is not discernible how these statements could have been of any material aid to the Government's case against [the codefendant]. At the same time, they were, as to Gordon, deadly poison. It is not surprising that the jury convicted Gordon and acquitted [his codefendant]. That the damaging effect of this testimony was cured by the cautionary instructions ignores realities and is contrary to all logic and common sense. Its admission on the flimsy pretext for which it was offered was of such a prejudicial nature as to require a reversal." Id., at 183.

In the present case it is not contended that the statements in question were exculpatory rather than incriminating, and

the jury returned a verdict of guilty as to all defendants on all counts charged.

For the reasons herein stated, we find no error justifying a reversal of the conviction. The conviction is affirmed.