JOHN HENRY GANT and FRANK EDWARD HOLIDAY, Plaintiffs in Error, v. STATE OF TENNESSEE, Defendant in Error.

466 S.W.2d 518.

Court of Criminal Appeals of Tennessee. July 9, 1969.

On Petition to Rehear Oct. 3, 1969.

Certiorari Denied by Supreme Court as to Gant Feb. 16, 1970.

Dale M. Quillen, William C. Wilson, Joe P. Binkley, Nashville, for plaintiffs in error.

George F. McCanless, Atty. Gen., Arnold F. Peebles, Jr., Asst. Atty. Gen., John J. Hollins and A. A. Birch, Jr., Asst. Dist. Attys. Gen., Robert H. Polk, Sp. Prosecutor, Nashville, for defendant in error.

## OPINION

WALKER, Presiding Judge.

At the January term, 1968, the Davidson County Grand Jury jointly indicted the defendants below, John Henry Gant and Frank Holiday, for murder in the first degree of Antoinette Utley and in a second count indicted Gant as an accessory before the fact of murder in the first degree. From their convictions under the first count of murder in the first degree and sentences to life imprisonment, they have appealed to this court.

We are confronted in this case as was the Supreme Court in Grooms v. State, 221 Tenn. 243, 426 S.W.2d 176 (1968), by the minutes of the trial court which affirmatively show that the defendants were convicted by a jury of thirteen members. In the case before us, however, the bill of exceptions shows that the trial judge discharged the alternate juror before the jury began its deliberations and also that the defendant Holiday demanded a poll of the jury when it returned the verdict. That poll shows that the jury returning the verdict was composed of the twelve members and no alternate. When the minutes and the bill of exceptions conflict, the bill of

exceptions controls. Helton v. State, 195 Tenn. 36, 255 S.W.2d 694; Church v. State, 206 Tenn. 336, 333 S.W. 2d 799; Percer v. State, 118 Tenn. 765, 103 S.W. 780.

The State's proof showed that Gant operated an extensive gambling business in Nashville and that James E. Utley testified against him in a federal court case tried November 21 and 22, 1966, resulting in Gant's conviction of violating the federal wagering statute. Gant and Utley had had civil litigation and Gant had threatened Utley on more than one occasion. Following his conviction in federal court, Gant employed Holiday to shoot Utley and urged him on several occasions to do so. On November 28, 1966, about a week after the federal court trial, Holiday, Albert Powell and Harold Chatman drove to Utley's home in Chatman's car. On the way Holiday purchased some ammunition for a .32 caliber pistol. Holiday got out of the car near Utley's house and rang his doorbell. Utley's four-year-old daughter, Antoinette, followed him to the door. When he opened the door, he did not recognize the man there and tried to close it. Holiday shot through the glass door, two bullets striking Utley, one of them about three or four inches from his stomach. Another struck his daughter in the head and caused her death about a week later.

The shooting occurred at approximately 5:00 P.M. Utley turned his porch light on and observed the person there. He first identified one John Taylor Gordon as his assailant, but four days later he told the officers he was mistaken in that identification. At the trial he positively identified Holiday.

Powell and Chatman testified they went to Utley's

house with Holiday. Wilma Jean Harris, a woman living with Holiday, testified that he left his apartment, returned and told her about the shooting and that he did not intend to shoot the girl. She also said that she met Gant at his nightclub and told him that Holiday needed some money; that Gant gave her $30 on that occasion; that Holiday paid the rent with a hundred-dollar bill soon after the shooting; that several times Gant suggested that she and Holiday leave town. Gant left the city at about this time. He telephoned several times and inquired about charges against Holiday. He says he was asking about charges of a bank robbery in which Holiday was involved and which later resulted in his conviction with Powell and Chatman on pleas of guilty.

Chatman testified that Gant saw him in jail and urged him to tell the grand jury he had been lying about Gant; that Gant said he did not tell Holiday to shoot the girl and that it was an accident; he also testified to a conversation between Gant and Holiday two days after the shooting in which Gant told Holiday, "Yeah, but you didn't kill him." Gant and Holiday each testified in his own defense and denied any participation in the crime. Gant said he did not know Miss Harris and denied all of her testimony against him as well as that of the other witnesses. Holiday testified that he was in his apartment at the time of the shooting and had nothing to do with it.

 Gant has filed a motion for suggestion of diminution of record to show an indictment for murder in the first degree at the May term 1967 against these defendants for which no disposition has been made.

The record filed in this case shows only the indictment

on which the defendants were tried and convicted. The defendants did not raise the question of another indictment in the lower court by plea in abatement, motion in arrest of judgment or by any other method. It was not presented to the trial judge in the motion for a new trial. There is no question that the defendants were convicted under the indictment appearing in the record. Questions raised for the first time on appeal will not be considered. Rule 14, paragraph (5), of the Supreme Court and this Court; Wilkerson v. State, 208 Tenn. 666, 348 S.W.2d 314; Kirby v. State, 214 Tenn. 296, 379 S.W.2d 780.

■ Gant assigns as error the failure of the trial judge to grant his motion for a severance. The test to determine if the trial judge was in error in failing to grant a motion for a severance is whether or not the defendant was clearly prejudiced in his defense by being jointly tried with his co-defendant. It is in the discretion of the trial judge; and, unless that discretion is abused, his action will not be disturbed on appeal. Ellis v. State, 218 Tenn. 297, 403 S.W.2d 293; Monts v. State, 218 Tenn. 31, 400 S.W.2d 722; Anderson v. State, 207 Tenn. 486, 341 S.W.2d 385; Hunter v. State, Tenn., 440 S.W.2d 1 (1969).

Gant contends that he was prejudiced by statements made by Holiday to witnesses. The trial judge carefully admonished the jury that statements out of the presence of Gant could not be considered by them. Gant relies on Stallard v. State, 187 Tenn. 418, 215 S.W.2d 807. In that case, the court found that *Stallard* had been prejudiced by a confession of a codefendant who did not testify. Holiday testified here and Gant had an op-

portunity to cross-examine him. In addition, Gant made a number of incriminating statements clearly admissible. There was ample competent evidence to convict Gant of murder in the first degree. The trial judge did not abuse his discretion by refusing to grant a severance.

■ ■ The defendants say that Powell, Chatman and Miss Harris were accomplices and their testimony is not corroborated. Powell and Chatman went with Holiday to the scene of the crime in Chatman's automobile. Chatman expected to receive some of the money from Holiday.

Chatman's car had a broken muffler which made a loud noise. Two neighbors of Utley, William and Rosemary McCall, corroborate their testimony that they parked Chatman's car making a loud noise in front of the McCall home at the time of the shooting.

Miss Harris was living with Holiday, and he told her about the crime, but she did not participate or assist him in its commission. Her knowledge that he "had a job to do for Gant" did not make her an accomplice. One cannot be deemed an accomplice merely because she knew of the intention of the accused to commit a crime. See 23 C.J.S. Criminal Law § 790, p. 13. Nor would her request after the crime of money from Gant for Holiday make her an accomplice.

Our Supreme Court has repeatedly held that slight circumstances may furnish the necessary corroboration of an accomplice's testimony. Alexander v. State, 190 Tenn. 260, 229 S.W.2d 331; Garton v. State, 206 Tenn. 79, 332 S.W.2d 169; State v. Fowler, 213 Tenn. 239, 373 S.W.2d 460; Williams v. State, 216 Tenn. 89, 390

S.W.2d 234. See also Binkley v. State, Tenn.Cr.App., 434 S.W.2d 336 (1968).

We think the testimony in this case is sufficiently corroborated by the facts and circumstances from which the jury was well warranted in inferring that the accomplices spoke the truth and that there is ample evidence of the defendants' guilt.

■ The defendants assign as error "that the court erred in its failure to further instruct the jury as requested by its foreman."

After beginning its deliberations, the jury returned. The jury had written some questions, and the foreman asked for addition instructions. In his replies to the foreman and another member of the jury, the trial judge referred them to his instructions and did not charge them orally, in violation of T.C.A. § 40-2516. Moreover, the question of the court's comment to the foreman is not raised in the motion for a new trial. The defendants had made no special requests. This assignment is overruled.

■ The defendants contend that the court erred in the instructions to the jury on the provisions of T.C.A. § 39-108 and say that this statute does not apply to murder cases. Gant contends that he could not be guilty of murder in the first degree.

Our statutes provide:

"39-107. Accessory before the fact defined.—Any person who shall feloniously move, incite, counsel, hire, command, or procure any other person to commit a felony, is an accessory before the fact."

"39-108. Accessories before the fact deemed principal offenders.—All accessories before the fact shall be deemed principal offenders and punished as such, except when otherwise expressly provided."

"39-2405. Punishment for murder in the first degree.—Every person convicted of murder in the first degree, or as accessory before the fact to such crime, shall suffer death by electrocution, or be imprisoned for life or over twenty (20) years, as the jury may determine."

"39-2407. Punishment of accessory before the fact of murder in first degree.—Any person tried and convicted as an accessory before the fact, of murder in the first degree, before the principal has been convicted, shall be punished by imprisonment in the penitentiary for life."

The defendants argue that the distinction between principals and accessories at common law still exists in Tennessee and that Gant cannot be guilty of murder under count one of the indictment. Gant's contention is that T.C.A. § 39-108 does not apply here because of the phrase "except as otherwise provided," and that T.C.A. § 39-2407 is the exception provided.

That statute provides a different punishment for accessories before the fact but is not relevant here. In the case before us, the principal and the accessory before the fact are tried together and, therefore, T.C.A. § 39-2407 does not apply.

Shannon's Code Sec. 6431, now T.C.A. § 39-108, was amended by striking "punished as principals are

punished" and inserting "deemed principal offenders and punished as such."

In considering the statute before the amendment, in Edwards v. State, 174 Tenn. 532, 128 S.W.2d 629, the Court said:

"At common law, one indicted as principal cannot be convicted on proof showing him to be only an accessory before the fact. 31 C.J., 845; Wharton's Criminal Law (12 Ed.), Vol. 1, p. 327. The only exception we have found to this rule is where by statute it is provided that an accessory before the fact shall be deemed and considered as a principal, and punished accordingly. 1 Wharton, 367."

The statute now includes the phrase "deemed principal offenders."

We think that Gant could be tried and convicted in the same manner as a principal and that he was properly convicted of murder under the first count.

We have considered all of the assignments and find them without merit.

The judgment of the lower court is affirmed.

OLIVER and GALBREATH, JJ., concur.

## ON PETITION TO REHEAR

WALKER, Presiding Judge.

The defendant Gant has filed a petition to rehear in which he says that we did not give proper weight to the admission of testimony of extrajudicial statements of his codefendant Holiday to the effect that Gant had

paid him to kill someone. In his testimony Holiday denied any participation in the crime. Gant relies on Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, and Townsend v. Henderson, 405 F.2d 324, (6th Cir., 1968).

We fully considered this question in our opinion and did not overlook it or the authorities cited by Gant.

In Townsend v. Henderson, supra, the Court was faced with the somewhat anomalous situation of a defendant convicted largely on a confession of crucial significance by a codefendant, Terry, which was held inadmissible as to that codefendant. The facts of this case are different.

In United States v. Levinson, 405 F.2d 971 (6th Cir., 1968), the same court held:

> "But Bruton clearly recognized that '(n)ot every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions. * * * It is not unreasonable to conclude that in many such cases the jury can and will follow the trial judge's instructions to disregard such information.' Bruton v. United States, supra. Cautionary instructions are impotent to overcome those situations in which there is great risk that the jury will not or cannot abide by the judge's instructions to the detriment of the defendant's vital interests. The Supreme Court characterized the statement of Bruton's co-defendant as 'powerfully incriminating.'

> "Strang, like Bruton's co-defendant, did not take

the stand. Contrary to Franklin's and Levinson's assertions it cannot be said that the allegedly inculpatory portions of Strang's oral and written statements had a devastating effect on the minds of the jurors. * * * However the case may be, the record is replete with other evidence and testimony to the same effect. * * *

* * * * * *

"In view of the fact that Strang's statements added little, if anything, to a record replete with similar and corroborating evidence, it cannot be said that the cautionary instructions accompanying the admission into evidence of Strang's oral and written statements was insufficient to eliminate any possible prejudice to Franklin and Levinson. Furthermore, we conclude that the admission of such statements, even if it be considered error, was harmless beyond a reasonable doubt." (Citing Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.2d 1065.)

This record is replete with admissible statements made by Gant connecting him with the crime and showing his participation in it. In *Bruton* the other evidence against the defendant was not persuasive, as the Supreme Court noticed in quoting the Solicitor General: " * * * (t)he other evidence against (petitioner) is not strong." *Bruton* had made no inculpatory statements and the Supreme Court noted: "Plainly, the introduction of Evans' confession added substantial, perhaps even critical, weight to the Government's case in a form not subject to cross-examination, since Evans did not take the stand." The evidence here was strong against Gant without Holiday's

statements. See Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284.

In Hunter v. State, Tenn., 440 S.W.2d 1 (1969), our Supreme Court affirmed that case in which several defendants made confessions implicating other codefendants but each of these confessors took the stand and was subjected to cross-examination by his codefendants. See People v. Rhodes, 41 Ill.2d 494, 244 N.E.2d 145; Lipscomb v. State, 5 Md.App. 500, 248 A.2d 491 (Court of Special Appeals of Maryland, 1968); Santoro v. United States, 9 Cir., 402 F.2d 920; Rios-Ramirez v. United States, 9 Cir., 403 F.2d 1016.

We are convinced that our original opinion was correct and we adhere to the affirmance of this conviction.

The petition to rehear is denied.

OLIVER and GALBREATH, JJ., concur.